IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| GREGORY NEMITZ, | ) | |
| | ) | |
| Plaintiff, | ) | No.  12 C 8039 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, and AT&T UMBRELLA | ) | |
| BENEFIT PLAN NO. 1, and AT&T | ) | |
| UMBRELLA BENEFIT PLAN NO. 2, and | ) | |
| AT&T, INC., as Plan Administrator, and | ) | |
| FIDELITY WORKPLACE SERVICES LLC, | ) | |
| and KENT MAGNUSON, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION ORDER</u>**

Plaintiff Gregory Nemitz filed an amended complaint against Defendants Metropolitan Life Insurance Company, AT&T Inc., AT&T Umbrella Benefit Plan No. 1, AT&T Umbrella Benefit Plan No. 2, Fidelity Workplace Services LLC (collectively, the "Corporate Defendants") and Kent Magnuson for, among other things, denial of a claim for life insurance benefits and for breach of fiduciary duty.  The Corporate Defendants moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the breach of fiduciary duty claims asserted against them pursuant to 29 U.S.C. § 1132(a)(3).  Magnuson moved separately pursuant to Rule 12(b)(6) to dismiss all claims asserted against him.  The Plaintiff sought to conduct additional discovery in this case. For the reasons set forth below, the Corporate Defendants' partial motions to dismiss are granted, Magnuson's motion to dismiss is denied and Nemitz is allowed to conduct limited discovery.

## **BACKGROUND**

The following facts are taken from the complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 520 (7th Cir. 2003); *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). In 1979, AT&T employed Nancy Nemitz and offered her benefits, including life insurance benefits payable upon her death to designated beneficiaries. Doc. 66, First Amended Complaint, at ¶ 12. If no beneficiary was properly designated, the life insurance benefits would be payable to her spouse. *Id.* Nancy Nemitz, unmarried at the time, filled out a beneficiary form that named her mother, Betty Magnuson, as the beneficiary of her life insurance benefits under Group Policy No. 18004-G, and her brother, Kent Magnuson, as contingent beneficiary under the same policy. *Id.* at ¶ 13.

In 1991 and 1992, Nancy Nemitz completed additional beneficiary forms and submitted them to AT&T or Fidelity. *Id.* at ¶ 14. In 1995, Nancy Nemitz accepted a buy-out from AT&T following a reduction in force and her employment with AT&T terminated. *Id.* at ¶ 15. As a result, her life insurance benefits terminated in 1995. *Id.* at ¶ 16. Nancy then married Plaintiff Gregory Nemitz in 1997. *Id.* at ¶ 17.

In 2001, AT&T rehired Nancy. *Id.* at ¶ 18. Therefore, she became eligible again for employment benefits, including life insurance benefits administered by MetLife. *Id.* at ¶ 19. Nemitz contends that Nancy was considered a new employee upon being rehired. *Id.* at ¶ 18. Nancy then completed a new life insurance beneficiary designation form that named her husband, Gregory Nemitz, as the primary beneficiary of her death benefit. *Id.* at ¶ 20. The Nemitzes then purchased optional supplemental life insurance benefits through AT&T to increase the benefit payable to Greg Nemitz upon Nancy's death. *Id.* at ¶ 24. When Nancy decided to retire in 2010, she met with representatives from AT&T and Fidelity to discuss her

benefits upon retirement. *Id.* at ¶ 26. Both Fidelity and AT&T confirmed that the Plaintiff was her dependent and beneficiary under the life insurance plans and that no other beneficiary was named on the forms. *Id.* at ¶¶ 28-29.

Nancy died in May 2011. *Id.* at ¶ 33. Following her death, the Plaintiff contacted AT&T, MetLife and Fidelity to inform them of Nancy's death and to claim the life insurance benefits. *Id.* at ¶ 36. However, the Corporate Defendants refused to provide Nemitz with information concerning the benefits, including who they considered the beneficiary to be. *Id.* at ¶ 37. At this time, Defendant Kent Magnuson, Nancy's brother, agreed to assist the Plaintiff in obtaining the life insurance benefits. *Id.* at ¶ 38. He further agreed to deal with the Corporate Defendants on the Plaintiff's behalf. *Id.* In reliance on this representation, the Plaintiff authorized the Corporate Defendants to deal directly with Magnuson. *Id.* at ¶ 39.

On December 8, 2011, MetLife denied Nemitz's claim for life insurance benefits. *Id.* at ¶ 41. It also informed the Plaintiff it had paid the benefits to Magnuson. *Id.* Shortly thereafter, Nemitz learned that MetLife had paid approximately $116,000 to Magnuson based on the beneficiary form Nancy executed in 1979. *Id.* at ¶ 42. Nemitz appealed the denial of his claim to the Plan Administrator on March 30, 2012. *Id.* at ¶ 44. MetLife upheld the denial of the claim on July 12, 2012. *Id.* at ¶ 45. Nemitz then filed the instant action in this Court on October 8, 2012.

## THE MOTIONS TO DISMISS

### I.     The Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy,* 51 F.3d at 717. To state a claim upon which relief may be granted, a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true... 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 120 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity then determines if they plausibly give rise to an entitlement to relief. *Id.*

## II.    Discussion

### A.    The Breach of Fiduciary Duty Claims Asserted Against the Corporate Defendants under Section 502(a)(3) Are Dismissed

Count I of the Complaint asserts a claim against Defendants Met Life and the AT&T Umbrella Plans for a failure to provide benefits under Title 29 U.S.C. § 1132(a)(1)(B). This section provides in relevant part that:

> A civil action may be brought by a participant or beneficiary [of an ERISA plan] to recover benefits due to him under the term of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Pled in the alternative to Count I's failure to provide benefits claim, Nemitz also asserts breach of fiduciary duty claims against the Corporate Defendants in Counts I, III, IV and V under § 502(a)(3). This section provides in relevant part that a civil action may be brought by a participant, beneficiary or fiduciary:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Corporate Defendants argue that the counts premised on a breach of fiduciary duty – Counts I, III, IV and V – should be dismissed because they are repackaged claims for benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(a)(1)(B).  According to the Corporate Defendants, equitable relief under § 502(a)(3) is unavailable as a matter of law if a claim for benefits is available under § 502(a)(1)(B).  The Court agrees.

In *Varity Corp. v. Howe,* the Supreme Court described § 502(a)(3) as a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  516 U.S. 489, 515 (1996).  As a result, individuals may be able to recover under § 502(a)(3) but "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate."  *Id.* at 515 (internal quotation omitted).

The majority of circuits have interpreted *Varity* to bar relief under § 502(a)(3) if relief is available under § 502(a)(1)(B).  *See, e.g., Antolik v. Saks, Inc.,* 463 F.3d 796, 803 (8th Cir. 2006); *Ogden v. Blue Bell Creameries U.S.A., Inc.,* 348 F.3d 1284, 1287-88 (11th Cir. 2003); *Tolson v. Avondale Indus., Inc.,* 141 F.3d 604, 610-11 (5th Cir. 1998); *Wilkins v. Baptist Healthcare Sys.,* 150 F.3d 609, 615-16 (6th Cir. 1998); *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474-75 (9th Cir. 1997); *Wald v. Sw. Bell Corp. Customcare Medical Plan,* 83 F.3d 1002, 1006 (8th Cir. 1996); *Korotynska v. Metropolitan Life Insurance Co.,* 474 F.3d 101, 107 (4th Cir. 2006).[1]  Additionally, courts in this district have nearly uniformly adopted this rule.  *See, e.g.,*

---

[1] The Seventh Circuit has not expressly determined whether *Varity* bars a claim under § 502(a)(3) where relief is available under § 502(a)(1)(B); however, it has noted that the majority of circuits have ruled this way.  *See Mondry v. Am. Family Mut. Ins. Co.,* 557 F.3d 781, 805 (7th Cir. 2009) (stating that a majority of the circuits interpret *Varity*

*Roque v. Roofers' Union Welfare Trust Fund,* No. 12 C 3788, 2013 WL 2242455, at *6 (N.D. Ill. May 21, 2013) (collecting cases); *but see Murphy v. U.S. Life Insurance Co.,* No. 04 C 2930, 2005 WL 711982, at *1 (N.D. Ill. Mar. 23, 2005). This interpretation of *Varity* makes sense because courts necessarily consider whether a fiduciary has maintained its obligations in determining whether a denial of benefits was proper. *See Korotynska,* 474 F.3d at 107 (quoting *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan,* 201 F.3d 335, 342-43 (4th Cir. 2000) (stating that a review of a benefits determination "should consider, among other factors, 'whether the decisionmaking process was reasoned and principled,' 'whether the decision was consistent with the procedural and substantive requirements of ERISA,' and 'the fiduciary's motives and any conflict of interest it may have.'")).

Nemitz contends that this authority is not as hefty as it once was in light of the United States Supreme Court's decision in *Cigna Corp v. Amara,* 131 S.Ct. 1866 (2011). *Amara,* according to Nemitz, "makes clear that a plaintiff who pleads under both sections of ERISA should not have its claims under one theory dismissed solely because he has pled both." Doc. 112 at 10. This is incorrect. *See, e.g., Roque,* 2013 WL 2242455, at *7 (holding that *Amara* does not alter the rule announced in *Varity*); *Krase v. Life Ins. Co. of N. Am.,* No. 11 C 7659, 2012 WL 4483506, at *3 (N.D. Ill. Sept. 27, 2012) (same); *Biglands v. Raytheon Employee Savings & Inv. Plan,* 801 F. Supp. 2d 781, 786 (N.D. Ind. 2011) (same). Rather, *Amara* simply held that a plaintiff may seek monetary relief under § 502(a)(3) where relief is not available under a separate section of ERISA.

Thus, where § 502(a)(1)(B) provides adequate relief, identical relief is not available under § 502(a)(3). This means an ERISA plaintiff is not permitted to "repackage" a denial of

---

as holding that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3).") (emphasis in original).

benefits claim as a § 502(a)(3) claim. *See, e.g., Roque,* 2013 WL 2242455, at *7-8; *Zuckerman v. United of Omaha Life Ins. Co.,* No. 09 C 4819, 2010 WL 2927694, at *5-6 (N.D. Ill. July 21, 2010). It should be noted that contrary to Nemitz's suggestion, adequate relief does not mean recovery, it means that an adequate remedy is available. *See, e.g., Hakim v. Accenture United States Pension Plan,* 656 F. Supp. 2d 801, 810-11 (N.D. Ill. 2009) (collecting cases and stating "whether [p]laintiff's § 502(a)(1)(B) claim will succeed is irrelevant; the pertinent inquiry is whether [p]laintiff can state a claim under § 502(a)(1)(B)"); *Roque,* 2013 WL 2242455, at *7 ("In conducting this inquiry, the Court notes that whether Roque can actually recover under § 502(a)(1)(B) is not the relevant question. Rather, the issue is simply whether an adequate remedy is available.").

There is no question in this case that the § 502(a)(3) claims in Counts I, III, IV and V merely repackage the denial of benefits claim also located in Count I. Nemitz's claim for denial benefits in Count I requests "[a]n order requiring the MetLife or the Plans, jointly and severally, to pay Gregory Nemitz $58,000 in life insurance benefits arising from Nancy Nemitz' death under the AT&T Umbrella Benefit Plan No. 1 and its underlying AT&T Medical Group Life Insurance Plan; An order requiring the MetLife or the Plans, jointly and severally, to pay Gregory Nemitz $58,000 in life insurance benefits arising from Nancy Nemitz' death under the AT&T Umbrella Benefit Plan No. 2 and its underlying AT&T Supplementary Group Life Insurance Plan." Doc. 66, Count I, at 15. The § 502(a)(3) claim in Count I requests the exact same relief. *See id.* In near identical fashion, Count III asks for relief under either § 502(a)(1)(B) or § 502(a)(3) and requests "[a]n order finding that the Defendants, by failing to provide Nemitz with copies of all beneficiary forms has failed to provide Nemitz with a full and fair review of his claims and enjoining the Defendants from relying on the 1979 beneficiary form

completed by Nancy Nemitz in which Magnuson is named as a contingent beneficiary or, alternatively, declaring MetLife's decision that Nemitz was not Nancy Nemitz's designated beneficiary is void." *Id.* at 23-24. Count IV makes the same request for relief. *See Id.* at 29 (requesting relief for violation of § 502(a)(3) in the form of "[a]n order requiring Defendants to put Plaintiff in the position he would have been had the Defendants properly provided, maintained and relied upon all of the beneficiary forms that Nancy Nemitz completed or attempted to complete or would have completed."). Finally, Count V effectively duplicates this request against by requesting "[a]n order requiring the Defendants to pay the life insurance benefits in accordance with Nancy Nemitz's intent" and "[a]n order determining that the 1979 beneficiary form completed by Nancy Nemitz is invalid, in light of her subsequent termination, marriage, rehire, entry into the Plans as a participant, and retirement." *Id.* at 33-34.

Indeed, other courts in this district have found similar allegations to constitute repackaging of denial of benefits claims as § 501(a)(3) claims. *See, e.g., Roque,* 2013 WL 2242455, at *7 (holding that request for "monetary relief in an amount equal to the cost of services [plaintiff] incurred because of the breaches of fiduciary duty" under § 502(a)(3) was identical to a request for monetary relief "in the form of all past due benefits on [plaintiff's] claims for his second surgery") (internal quotations omitted); *Krase,* 2012 WL 4483506, at *3 ("Krase seeks the same relief for the same injury under both subsections: life insurance benefits owed to him in the amount of $226,000.") (internal quotations omitted). Accordingly, since the relief Nemitz seeks on the breach of fiduciary duty claims is the same as the denial of benefits claim, *i.e.,* payment of the $116,000, there is no injury separate and distinct from the claim for benefits. Thus, these claims must be dismissed under *Varity.* Since certain breach of fiduciary

duty claims and allegations are intermingled within the allegations for the failure to pay benefits claim, the Plaintiff is directed to file an amended complaint that removes the dismissed claims.[2]

### B. The Claims Against Magnuson Are Sufficiently Alleged

In addition to the claims asserted against the Corporate Defendants under ERISA, Plaintiff asserted three common law claims against his brother-in-law, Kent Magnuson: (1) common law breach of fiduciary duty; (2) inducement of breach of fiduciary duty; and (3) unjust enrichment. Plaintiff has adequately pleaded these claims.

### 1. Magnuson's Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty under Illinois law are: (1) a fiduciary relationship; (2) a breach of the fiduciary duty; and (3) injury resulting from the breach. *See, e.g., Foodcomm Int'l v. Barry,* 463 F. Supp. 2d 818, 827 (N.D. Ill. 2004) (quoting *Romanek v. Connelly,* 753 N.E.2d 1062, 1072 (Ill. App. Ct. 2001)); *Polansky v. Anderson,* No. 04 C 3526, 2007 WL 4162807, at *6 (N.D. Ill. Nov. 20, 2007) (internal citations omitted); *Lucini Italia Co. v. Grappolini,* No. 01 C 6405, 2003 WL 1989605, at *13 (N.D. Ill. Apr. 28, 2003) (internal citations omitted). Magnuson contends that Plaintiff has failed to sufficiently allege each of these elements.

Principles and agents owe each other fiduciary duties as a matter of law. *See Mullaney v. Savage,* 78 Ill. 2d 534, 546 (1980); *see also, e.g., Polansky,* 2007 WL 4162807, at *6; *Pommier v. Peoples Bank Marycrest,* 967 F.2d 1115, 1119 (N.D. Ill. 1999). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by an alleged agent and whether the alleged agent can affect the legal relationships of

---

[2] Defendant AT&T Inc. concedes that Count II, a claim for failure to produce documents, is adequately alleged. However, it moves to strike certain allegations that are incorporated into the Count because they do not pertain to AT&T Inc. Plaintiff has agreed to the removal of those allegations. However, because the Court has now ordered the Plaintiff to file an amended complaint, the motion to strike is moot. If it needs to be re-raised after the filing of the amended complaint, AT&T is directed to raise it then.

the principal." *Chemtool, Inc. v. Lubrication Techs.,* 148 F.3d 742, 745 (7th Cir. 1998). To adequately plead the existence of an agency relationship, "a plaintiff must allege a factual predicate to create the inference of agency." *Frazier v. U.S. Bank Nat. Ass'n,* No. 11 C 8775, 2013 WL 1337263, at *4 (N.D. Ill. Mar. 29, 2013); *see also, e.g., Addison Automatics, Inc. v. RTC Group,* No. 12 C 9869, 2013 WL 3771423, at *5 (N.D. Ill. July 16, 2013); *Whitley v. Taylor Bean & Whitacker Mortgage Corp.,* 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009). Here, Plaintiff sufficiently alleges that Magnuson acted as his agent. Plaintiff alleges that: (1) "Magnuson agreed to assist Nemitz in obtaining the life insurance benefits" (Doc. 67 at ¶ 162); and (2) "Nemitz signed an authorization form giving Fidelity and MetLife authority to discuss Nancy's life insurance benefits directly with Magnuson on behalf of and for the benefit of Nemitz." Doc. 67 at ¶¶ 39, 165.) These allegations are sufficient to create the factual predicate for the inference of agency because they demonstrate that Nemitz and Magnuson entered into an agreement whereby Magnuson agreed to act on Nemitz's behalf and had the express power to affect Nemitz's legal relationships with respect to his attempts to collect the benefits allegedly owed him.

Nemitz's allegation that Magnuson then sought Nancy Nemitz's life insurance benefits for his own use is sufficient to allege a breach of the fiduciary duty owed by Magnuson to Nemitz because an agent is obligated to act solely for the benefit of the principal in all matters connected with his agency. *See Mullaney,* 78 Ill. 2d at 580; *see also, e.g., Lyssenko v. Internal Titanium Powder, LLC,* No. 07 C 6678, 2010 WL 5317007, at *4 (N.D. Ill. Dec. 17, 2010) ("an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.") (internal citations omitted); *Riad v. 520 S. Michigan Avenue Associates,* 78 F. Supp. 2d 748, 763 (N.D. Ill. 1999) (same). Therefore, Nemitz adequately

pleaded a breach because he alleged that Magnuson, his agent, used the agency relationship to obtain the life insurance benefits for himself instead of for Nemitz. Finally, Nemitz pleaded damage from the breach because he alleged that Magnuson's actions resulted in MetLife paying the benefits to Magnuson and not to Nemitz. Thus, the breach of fiduciary duty claim is sufficiently alleged to withstand Magnuson's Rule 12(b)(6) challenge.

## 2. Magnuson's Inducement of Breach of Fiduciary Duty

In order to maintain a cause of action for tortious inducement of a breach of a fiduciary duty, Nemitz must allege: (1) collusion by the defendant with a fiduciary in committing a breach; (2) knowing participation in or inducement of the breach of duty; and (3) knowing acceptance of the benefits resulting from the breach. *See Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 508 (7th Cir. 2007) (citing *Regnery v. Meyers,* 679 N.E.2d 74, 80 (Ill. App. Ct. Ct. 1997)).[3] Magnuson does not dispute that the Complaint sufficiently alleges the second and third elements; however, he contends that the Plaintiff failed to adequately plead collusion.

Nemitz alleges that "[w]ithout knowledge, authorization, or approval of Nemitz, Magnuson colluded with MetLife and Fidelity to obtain life insurance benefits for himself, which were properly payable to Nemitz." Doc. 66 at ¶ 182. This single allegation would be insufficient by itself to plausibly raise an inference of collusion; however, the Complaint contains a number of other allegations that make the inference plausible. For example, the Complaint alleges that: (1) "In 2010. . . Nancy Nemitz met with representatives from AT&T and Fidelity to discuss her benefits upon retirement" (*Id.* at ¶ 26); (2) "Fidelity and AT&T advised Nancy Nemitz that Greg Nemitz was her beneficiary for the life insurance and supplemental life

---

[3] Magnuson does not assert that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) should apply to this claim. *See, e.g., Borsellino,* 477 F.3d at 507-08 (holding that tortious inducement claim was subject to Rule 9(b) because complaint sounded in fraud). Therefore, the Court will limit its determination to simply whether the claim is adequate under Rule 8.

insurance benefits offered by the Plans" (*Id.* at ¶ 29); (3) "Following her retirement, in reliance on the representations made by Fidelity and AT&T. . .Nancy Nemitz and Greg Nemitz continued to submit monthly payments for the optional and supplemental life insurance. . . with the belief, understanding, and intent that Greg Nemitz would receive the benefits" (*Id.* at ¶ 32); (4) Nemitz authorized Magnuson to pursue the benefits on his behalf (*Id.* at ¶ 39); and (5) Magnuson then contacted Fidelity and MetLife and sought the benefits on his own behalf (*Id.* at ¶¶ 153-185). These allegations are sufficient for the Court to reasonably infer that Fidelity and AT&T were aware that the Plaintiff is the beneficiary of the life insurance policies but nevertheless contrived to pay the benefits to Magnuson instead of Nemitz due to Magnuson's inducements. As a result, these allegations sufficiently raise the inference of collusion between Magnuson and the Plans' fiduciaries for purposes of stating this claim.

### 3. Magnuson's Unjust Enrichment

Finally, Nemitz has sufficiently alleged a claim for unjust enrichment against Magnuson. In Illinois, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (1989). Here, Nemitz alleges that Magnuson retained the $116,000 that should have allegedly been paid to Nemitz. He also alleges that Magnuson's retention of this benefit violates fundamental principles of justice, equity and good conscience because Magnuson knew that: (1) Nancy Nemitz intended the Plaintiff to be the recipient of her life insurance benefits; and (2) the Plaintiff "made monthly payments for supplemental coverage under the Plans and that such

coverage was purchased in order to provide payments to Greg Nemitz upon Nancy Nemitz's death." Doc. 68, ¶ 159. These allegations are sufficient to state a claim for unjust enrichment.

Magnuson's contention that unjust enrichment is not an independent cause of action does dictate a different result. First, the Illinois Supreme Court has repeatedly found unjust enrichment to constitute a stand-alone cause of action. *See Raintree Homes, Inc. v. Village of Long Grove,* 807 N.E.2d 439, 445 (2004); *Indep. Voters v. Illinois Commerce Commission,* 510 N.E.2d 850, 852-58 (1987). Therefore, Magnuson's citation to an intermediate Illinois appellate court that reached the opposite conclusion is of little weight. *See* Doc. 117, Magnuson Memorandum at 8 (citing *Martis v. Grinnell Mut. Reinsurance Co.,* 905 N.E.2d 920 (Ill. App. Ct. 2009)). Second, the Seventh Circuit has also found unjust enrichment to be a viable claim under Illinois law. *See Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2009). While unjust enrichment claims tend to stand or fall with related claims of wrongdoing, Nemitz's claim is viable at this juncture because he has adequately stated the claim for breach of fiduciary duty upon which the unjust enrichment claim is based. Therefore, he has sufficiently pleaded this claim as well.

## THE PLAINTIFF'S RIGHT TO DISCOVERY

Nemitz also contends that he is entitled to conduct limited discovery in this case. The Court enjoys broad discretion to permit discovery in denial of benefits cases. *See Semien v. Life Insurance Co. of North America,* 436 F.3d 805, 814 (7th Cir. 2006). However, the determination as to whether discovery is required generally turns on the applicable standard of review. If a denial of benefits case is reviewed under the *de novo* standard, the Court may "permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment." *Patton v. MFS/Sun Life Fin. Distribs., Inc.,* 480 F.3d 478, 490 (7th Cir. 2007)

(quoting *Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 (7th Cir. 1994)); *see also, e.g., Ehas v. Life Insurance Company of North America,* No. 12 C 3537, 2012 WL 5989215, at *1 (N.D. Ill. Nov. 29, 2012). However, with limited exceptions, discovery beyond the administrative record is generally not allowed in cases reviewed under an arbitrary and capricious standard. *See Perlman v. Swiss Bank Corp.,* 195 F.3d 975, 982 (7th Cir. 1999).

## I.     Standard of Review

ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations. To fill this gap, courts have held that denial of insurance benefits is reviewed *de novo* under ERISA "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 114-15 (1989); *see also Conkright v. Frommert,* 559 U.S. 506 (2010); *Black v. Long Term Disability Ins.,* 582 F.3d 738, 743 (7th Cir. 2009); *Perlman,* 195 F.3d at 980. When the plan gives the administrator discretionary authority, the standard of review is deferential and the court "will set aside an administrator's decision only if it is arbitrary and capricious." *Black,* 582 F.3d at 743-44 (citing *Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 332 (7th Cir. 2000)); *Aschermann v. Aetna Life Ins. Co.,* 689 F.3d 726, 728 (7th Cir. 2012). In order for a plan to grant discretionary authority to the fiduciary, "[t]he reservation of discretion must be communicated clearly in the language of the plan, but the plan need not use any particular magic words." *Gutta v. Standard Select Trust Ins. Plans,* 530 F.3d 614, 619 (7th Cir. 2008); *Semien,* 436 F.3d at 810 (plan should "clearly and unequivocally state that it grants discretionary authority").

In this case, the Defendants cite to various provisions of Summary Plan Descriptions ("SPDs") to establish that the AT&T Umbrella Plans gave discretion to MetLife to determine

eligibility for benefits or to construe the terms of the plan. The SPD for the AT&T Rules for Employee Beneficiary Designations (the "Rules") defines itself as "the official document of" the Rules. Doc. 58-7, Administrative Record, at MET00630; *see also* MET00632 (The SPD also states that it is "the official plan document for the AT&T Rules for Employee Beneficiary Designations."). This document governs and is the "final authority on the terms of the Rules for the Programs that adopt them." *Id.* One of the "Key Points" of the Rules is that the Rules "determine who will receive the Proceeds from the Programs that have adopted the Beneficiary Designation Rules." *Id.* at MET00632.

The SPD for the AT&T Medical and Group Life Insurance Plan – Group Life Insurance; AT&T Supplementary Group Life Insurance Program adopts the Rules and provides that "basic life insurance, supplementary life insurance. . . will be paid in accordance with the AT&T Beneficiary Designation Rules." Doc. 58-8 at MET00722; *see also* Doc. 58-7 at MET00632-33 ("The Rules are generally applicable for Programs that adopt them, including, but not limited to, the following Programs. . . AT&T Medical and Group Life Insurance Plan – Group Life Insurance . . . AT&T Supplementary Group Life Insurance Program.").

The Rules identify Fidelity Service Center ("Fidelity") as the Beneficiary Designation Administrator. Doc. 58-7 at MET00638-39; MET00654. The Life Insurance SPD designates MetLife, the insurer of the life insurance programs, as the Program Administrator for the Plans. Doc. 58-9 at MET00744. As Program Administrator, MetLife was vested with the duty to distribute the life insurance proceeds upon the death of the participant. Doc. 58-7 at MET00648 ("Proceeds are distributed by the Program Administrators based on the most current Form(s) on file."). The Rules give MetLife full discretion to fulfill this duty. Specifically, the Rules provide that:

> AT&T, the Beneficiary Designation Administrator, the Program Administrators and each Person to whom authority has been delegated to make all determinations of fact or eligibility for Proceeds under the Rules shall have full and exclusive authority and discretion to make such decisions under the Rules and the applicable Program. The decision of . . . the Program Administrators or any delegate, as applicable, made in good faith in accordance with the Rules and the applicable Program, will be final and conclusive and will not be subject to further review.

Doc. 58-7 at MET00635-36. Therefore, the Rules, *i.e.,* the plan document, make a clear grant of discretionary authority to the Program Administrator, *i.e.,* MetLife, to determine who is eligible to receive life insurance benefits under the Plans. As a result, MetLife's decision to deny Nemitz's claim for benefits under the Plans will be reviewed under the arbitrary and capricious standard.

Plaintiff's arguments to contrary are unpersuasive. First Plaintiff is incorrect because, as set forth above, the Rules make a clear grant of discretion to the Program Administrator. Since the Plans identify MetLife as their Program Administrator, there is a clear grant of discretion to MetLife regardless of the fact that MetLife is not specifically mentioned in the Rules. Second, the discretionary clause is not contradictory. It gives the Plan Administrator, the Beneficiary Designation Administrator and the Program Administrators discretionary authority in carrying out their distinct duties. The duty to decide claims and pay benefits is vested with the Program Administrator. The discretionary clause gives a claimant clear notice that the Program Administrator possesses discretion in carrying out this duty. Finally, the procedural violations alleged by Nemitz do not establish that *de novo* review is warranted. *See Wetizenkamp v. Unum Life Insurance Company of America,* 661 F.3d 323, 329 n. 3 (7th Cir. 2011) (citing *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115 (2008)) (noting that "alleged procedural violations do not mandate a different standard of review but instead will be considered as factors in determining

whether Unum's decision to discontinue benefits was arbitrary and capricious."). Accordingly, the Court will apply the arbitrary and capricious standard of review.[4]

## II.     The Plaintiff Is Entitled to Limited Discovery

In *Semien,* the Seventh Circuit held that even when the arbitrary and capricious standard applies, discovery is permitted in exceptional circumstances where the claimant can "identify a specific conflict of interest or instance of misconduct" and "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect." *Semien,* 436 F.3d at 815. However, based on the Supreme Court's subsequent decision in *Metropolitan Life Insurance v. Glenn,* the Seventh Circuit has found the *Semien* holding to be both applicable but "soften[ed]." *See Dennison v. MONY Life Ret. Inc. Sec. Plan. for Employees,* 710 F.3d 741, 746-47 (7th Cir. 2013). While the softened standard is not specifically defined, the Court finds that limited discovery is warranted in this case even applying the former standard.

Plaintiff has identified two conflicts of interest. The first is that MetLife suffers from the classic structural conflict of interest because it is both the payor of benefits and the entity vested with authority to determine whether benefits should be paid. *See, e.g., Baxter v. Sun Life Assurance Co.,* 713 F. Supp. 2d 766, 773 (N.D. Ill. May 20, 2010) (allowing discovery on structural conflict of interest when arbitrary and capricious standard applies); *Garvey v. Piper Rudnick LLP Long Term Disability Insurance Plan,* 264 F.R.D. 394, 399 (N.D. Ill. 2009)

---

[4] Plaintiff also contends that because MetLife did not review the claim within the time allowed, the claim is "deemed denied" and any review is de novo. Plaintiff is incorrect. Title 29 C.F.R. § 2560.503-1(l) provides that when an administrator does not comply with the required claims procedure, the claimant is "deemed to have exhausted the administrative remedies available under the plan and shall be entitled to" bring a suit in federal court. Thus, Nemitz could have brought his claim after the time period expired and he would have been entitled to de novo review. However, he did not do this. Instead, he waited to bring his claim until after MetLife rendered a decision and after the appeal. Thus, Nemitz has waived the untimeliness issue. *See, e.g., Jacobson v. SLM Corp. Welfare Benefit Plan,* No. 8 C 267, 2009 WL 2841086, at *5 (S.D. Ind. Sept. 1, 2009) (holding that despite the fact the claim was denied late, plaintiff "waived her chance to take advantage of a more deferential standard of review" because she did not file suit until after the administrative appeal.); *Neal v. Christopher & Banks Comprehensive Major Medical Plan,* 651 F. Supp. 2d 890, 905 (E.D. Wis. 2009) (holding that deferential standard of review applied despite untimely appeal decision).

(finding plaintiff "demonstrat[ed] that [defendant] has an inherent conflict of interest as both administrator of the Plan and payor of benefits"); *Hoffman v. Sara Lee Corp.,* No. 11 C 3899, 2012 WL 404496, at *4-5 (N.D. Ill. Feb. 8, 2012) (same). The second alleged conflict of interest is that instead of making an independent determination on the merits of the Plaintiff's claim, MetLife allowed AT&T to determine the claim and then rubber-stamped AT&T's decision because AT&T is MetLife's client. The Court believes there is sufficient evidence in the Administrative Record to allow inquiry on these two issues.

As set forth above, the benefits were distributed to Magnuson under the 1979 form executed by Nancy Nemitz, the decedent. However, the Administrative Record shows that if Nancy Nemitz had left AT&T for reasons other than retirement, than she should have been treated as a "new-hire" when she rejoined the company in 2001. *See* Doc. 58-3 at MET00268. Under this scenario, the 1979 form that was relied on would be invalid. *See id.*; *see also* Doc. 58-6 at MET00568. Instead, the benefits would be paid out according to the hierarchical default procedure in which the decedent's spouse is given first priority. *See* Doc. 58-7 at MET00637 (explaining how benefits are paid under the Rules if there is no beneficiary designation on file).

Even though it paid benefits to Magnuson, MetLife still has a structural conflict because Nemitz made a separate claim for benefits. If Nemitz's claim is valid, MetLife could potentially be liable for this claim. The Administrative Record contains e-mails and memoranda generated by MetLife employees that raise a question as to whether the claim paid to Magnuson was done accurately and in good faith. For example, one memorandum dated August 15, 2011 states that "[a] paid in good faith would not be advisable at this time, as we should have questioned some of the informaiton [sic] in the file." *See* Doc. 58-2, at MET00183. Another one states that "advised if statement is true, then we were supplied incorrect designation by Recordkeeper. This is not

18

'good faith.' Before we make determination contact Rk and verify information . . ." Doc. 58-2 at MET00208. Yet another memorandum states that "[t]he only beneficiary designation on file dates back to 1979. We made payment to Kent Magnuson on 6/21 based on this designation. We had no knowledge about the EE's interrupted work history." Doc 58-3 at MET00269. Therefore, Nemitz has identified a structural conflict of interest and made a prima facie showing of good cause that limited discovery into this conflict could reveal a procedural defect.

Additionally, Nemitz has established that a separate conflict of interest arose for MetLife when it allegedly abrogated its decision-making authority to AT&T. MetLife paid the benefits to Magnuson with apparently no knowledge of the decedent's interrupted work history. See Doc. 58-3 at MET00269. This interruption would allegedly have invalidated the 1979 designation because the decedent should have been treated as a new hire when she was rehired in 2001. Under this scenario, Nemitz, as the decedent's spouse, would be the beneficiary of the policy unless the decedent executed a new beneficiary form in 2001, or thereafter, naming a different beneficiary. See Doc. 58-3 at MET00268; Doc. 58-7 at MET00637. However, AT&T intervened and told MetLife that the decedent's employment "bridged" back to her original date of hire after she had been reemployed for five years. Doc. 58-2 at MET00162 (MetLife memorandum stating "I explained AT&T's position: Since the EE was re-hired in 2001 and worked until 2006, after 5 years they bridged her employment back to 1995 as if she had not left."); MET00179 (MetLife memorandum discussing communication from AT&T representative that states "[f]rom what we can determine on eLink and in FileNet. She was a 'rehire' and her service bridged in 11/2006 after 5 years of continuous employment to 7/19/1985 for vacation purposes."). Thus, according to AT&T, the 1979 beneficiary form was valid because the decedent had been reemployed for five years. MetLife appears to have relied on

AT&T's representations about this rule in making its decision. See Doc. 58-2 at MET00186 (MetLife memorandum stating "[a]dvised that ATT [sic] made decision we will be mailing him a letter advised they accepted the 1979 one. . ."); see also Doc 58-2 at MET00162, 179, 189; Doc 58-6 at MET00565-68.

However, neither MetLife nor AT&T's position paper identifies any provision in the Plans for this "bridging" rule. MetLife points to a provision in the Rules that "[a] Beneficiary Designation for a Program in which you are not participating, or for which your participation is suspended or ceases, will apply for that Program when you begin or resume participation unless you submit a new Form for that Program." Doc. 58-7 at MET00635. This does not support the existence of the "bridging" rule. The provision could be read to mean the 1979 Form was effective the instant AT&T rehired the decedent but cannot be read to mean an old beneficiary form is reactivated five years after rehire. Thus, based on the Administrative Record, it does not appear that AT&T or MetLife relied on this provision in denying Nemitz's claim. Thus, Nemitz established that MetLife operated with a conflict of interest when it allegedly allowed AT&T to decide Nemitz's claim. MetLife has a financial interest in maintaining its relationship with AT&T. It may have acted in that interest when it ratified AT&T's decision with respect to Nemitz's claim notwithstanding the fiduciary duties it owes to the beneficiary of the Plans. Given these circumstances, Nemitz shall be permitted to conduct limited discovery on this conflict as well.

MetLife is correct, however, that most of Nemitz's requests for discovery are directed towards the merits of MetLife's decision. Not whether a conflict of interest affected the decision. In his response to MetLife's position paper, Nemitz identifies seven subjects upon which he would like to conduct to discovery. See Doc. 84 at 13-14. However, the only subject

appropriate for discovery is Nemitz's No. 6: "did MetLife's multiple conflicts of interest impact its decision." *Id.* at 14. Nemitz does not specify what discovery would be required to determine this. Accordingly, the parties are directed to meet and confer to determine what discovery they believe is required based on this order. Within 28 days of the entry of this order, the parties are further directed to report to the Court on what discovery will be required. The report shall identify any categories of documents that will be requested, the names of any deponents, the expected subject matters upon which the deponents will testify and will also propose a discovery cut-off date.

## CONCLUSION

For the reasons set forth above, the Corporate Defendants' motions to dismiss are granted. To the extent Count I alleges a claim under 29 U.S.C. § 1132(a)(3), the claim is dismissed. Counts III, IV and V are dismissed. Plaintiff shall file an amended complaint that conforms to this Court's Order within fourteen days of the entry of the Order. Defendant AT&T Inc.'s motion to strike is denied as moot. Defendant Magnuson's motion to dismiss is denied. Plaintiff shall be allowed to conduct limited discovery on the conflict of interest issues.


_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 31, 2013